**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>*ex rel.* Mark Mitchell, and<br>**MARK MITCHELL**, individually,<br><br>Plaintiffs,<br><br>v.<br><br>**JAY SUITES I, LLC**,<br>**JAY SUITES II, LLC**,<br>**34th STREET SUITES, LLC**,<br>**38th STREET SUITES, LLC**,<br>**BROAD SUITE STREETS, LLC**,<br>**MADISON AVENUE SUITES, LLC**,<br>**MIDTOWN EAST SUITES, LLC**,<br>**TIMES SQUARE SUITES, LLC**,<br>**JACK SROUR**,<br>**JUDA SROUR**, and<br>**SIGNATURE BANK**,<br><br>Defendants. | No. _____<br><br>**FILED UNDER SEAL**<br>**PURSUANT TO**<br>**31 U.S.C. § 3730(b)(2)**<br><br>**DO NOT PLACE**<br>**ON PUBLIC DOCKET**<br><br>**JURY TRIAL DEMANDED** |

## *QUI TAM* COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff and *qui tam* Relator Mark Mitchell, by and through his undersigned counsel, Brown, LLC, alleges of personal knowledge as to his own observations and actions, and on information and belief as to all else, as follows:

### I.
### PRELIMINARY STATEMENT

1.      In 2020, at the height of the COVID-19 pandemic in the United States, the Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). The CARES Act included the Paycheck Protection Program (the "PPP"), which enabled the federal government, through the Small Business Administration ("SBA") to guarantee emergency loans to small businesses facing payroll difficulties. The PPP was a lifeline for many businesses across

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

the country, allowing them to preserve jobs and, thereby, keeping the country from tumbling into catastrophic recession. Unfortunately, the program also attracted opportunistic bad actors.

2.      Because PPP loan amounts were calculated based on the borrowers' payroll costs, applicants who chose to fraudulently overstate their payroll costs could receive larger loans than they were legitimately entitled to.

3.      By means of such a scheme, Defendants Jay Suites I, LLC; Jay Suites II, LLC; 34th Street Suites, LLC; 38th Street Suites, LLC; Broad Suite Streets, LLC; Madison Avenue Suites, LLC; Midtown East Suites, LLC; Times Square Suites, LLC (collectively, the "Jay Suites Corporate Defendants"); Jack Srour; and Juda Srour (the "Individual Defendants" and, together with the Jay Suites Corporate Defendants, the "Jay Suites Defendants") obtained a total of sixteen PPP loans, for an aggregate amount of $1,386,378, when they were potentially eligible for no more than a fraction of that amount.

4.      The Jay Suites Defendants conspired with Defendant Signature Bank to fraudulently obtain these loans, and so that the Bank could obtain processing fees to which it was not entitled.

5.      Defendant Signature Bank also entered into separate similar conspiracies with many other recipients of the thousands of PPP loans that the Bank made.

6.      Relator therefore brings this action on behalf of the United States for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

7.      Relator also brings claims on his own behalf for the Jay Suites Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), and the New York Wage and Hour Laws, N.Y. Labor Law Article 6 §§ 190 *et seq.,* Article 19 §§ 650 *et seq.,* ("NYLL") and related sections of the New York Codes, Rules, and Regulations ("NYCRR"). The

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

Jay Suites Defendants (a) failed to compensate Relator for hours worked in excess of forty per workweek at an overtime rate not less than one and one-half times his regular rate, and (b) failed to pay Relator an additional hour of pay at his basic minimum hourly rate on those days when his spread of hours exceeded ten, as required under 12 NYCRR § 142-2.4.

8.      This Complaint is filed *in camera* and under seal pursuant to 31 U.S.C. § 3730(b)(2). A copy of this Complaint, along with written disclosure of substantially all material evidence and information that Relator possesses, was served on the Attorney General of the United States and the United States Attorney for the Southern District of New York, pursuant to 31 U.S.C. § 3730(b)(2).

## II.
## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, because this Complaint raises federal questions; and pursuant to 31 U.S.C. § 3732, because the action is brought under 31 U.S.C. § 3730 and Defendants transact business in this District. The Court has subject matter jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), because Defendants can be found in and/or transact business in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1395(a), and 31 U.S.C. § 3732(a), because at all times relevant to this Complaint, Defendants regularly conducted substantial business within this District and maintained employees in this District.

12.     The Complaint has been filed within the time periods prescribed by 31 U.S.C. § 3731(b), 29 U.S.C. § 255, and NYLL §§ 198(3) and 663(3).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

### III.
### NO PUBLIC DISCLOSURE;
### INDEPENDENT AND MATERIAL KNOWLEDGE
### OF THE VIOLATIONS ALLEGED HEREIN

13.    Relator makes the allegations in this Complaint based on his own knowledge, experience and observations.

14.    There has been no public disclosure, relevant under 31 U.S.C. § 3730(e), of the allegations or transactions in this Complaint. Relator is the "original source" of the allegations in this Complaint even if any such public disclosure occurred. To the extent that there may have been a public disclosure under 31 U.S.C. § 3730(e)(4)(A), Relator possesses information that is independent of and materially adds to any allegations that may have been publicly disclosed.

15.    Relator voluntarily provided information about Defendants' violations to the United States before filing this action.

### IV.
### THE PARTIES

**A.    Plaintiff the United States**

16.    Relator brings this action on behalf of Plaintiff the United States. At all times relevant to this Complaint, the United States, through its agency the Small Business Administration, guaranteed the loans provided to the Jay Suites Defendants via the Paycheck Protection Program.

**B.    Defendants**

17.    On information and belief, the eight Jay Suites Corporate Defendants named in this Complaint conduct business together as "Jay Suites." *See* https://www.jaysuites.com/ (last accessed July 30, 2021). On information and belief, Defendants Jack and Juda Srour established Jay Suites in approximately 2009.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

18.    Jay Suites is in the business of "providing fully-furnished, luxury office rentals with shared amenities" for short-term rental in Manhattan. *See* https://www.jaysuites.com/ new-york-office-space-rental#overview (last accessed July 30, 2021). Each Jay Suites location is separately incorporated as a domestic limited-liability corporation:

     a.   Defendant Jay Suites I, LLC, provides office space for rent at 369 Lexington Ave., New York, NY (advertised as the "Grand Central" location).

     b.   Defendant Jay Suites II, LLC, provided office space for rent at 1370 Broadway, New York, NY (advertised as the "Penn Station" location). On information and belief, this location closed in February 2021.

     c.   Defendant 34th Street Suites, LLC, provides office space for rent at 31 W. 34th Street, New York, NY.

     d.   Defendant 38th Street Suites, LLC, provides office space for rent at 15 W. 38th Street, New York, NY (advertised as the "Fifth Avenue" location).

     e.   Defendant Broad Suite Streets, LLC, provides office space for rent at 30 Broad Street, New York, NY (advertised as the "Financial District" location).

     f.   Defendant Madison Avenue Suites, LLC, provides office space for rent at 315 Madison Ave., New York, NY.

     g.   Defendant Midtown East Suites, LLC, provides office space for rent at 515 Madison Ave., New York, NY.

     h.   Defendant Times Square Suites, LLC, provides office space for rent at 1441 Broadway, New York, NY.

19.    According to records filed with the New York Department of State, each of the Jay Suites Corporate Defendants has or had its principal place of business at 369 Lexington Ave., New York, NY, which, like the rental locations themselves, is within this judicial district.

20.    On information and belief, Defendants Jack and Juda Srour are brothers and are owners of each of the Jay Suite Corporate Defendants.

21.    Defendant Signature Bank is a domestic corporation with headquarters at 565 Fifth Avenue, New York, NY 10017. Signature Bank was the lender for all of the PPP loans at issue

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

here. On information and belief, the Bank also holds the payroll account(s) of the Jay Suites Defendants.

## C.    Relator

22.    Relator Mark Mitchell is a citizen of the United States and at all times relevant to this Complaint was a resident of Kings County, New York.

23.    Relator began working for the Jay Suites Defendants in approximately November 2014, and in 2016 he became General Manager of the Times Square Suites location, at 1441 Broadway. He also had duties as Sales Agent for that location.

24.    Relator resigned from his position on or about June 7, 2021.

25.    During his seven-year tenure with the Jay Suites Defendants, Relator came to know approximately how many people were employed at each Jay Suites location at any given time.

**V.**
**THE LEGAL FRAMEWORK**

## A.  The CARES Act and the Paycheck Protection Program

### 1.   Generally

26.    In March 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136. The CARES Act, *inter alia*, empowered the SBA to guarantee loans made by private lenders to eligible small businesses under the Paycheck Protection Program ("PPP"). The PPP is codified as amendments to the Small Business Act, at 15 U.S.C. §§ 636(a)(36), *et seq.*

27.    The PPP was "designed to provide a direct incentive for small businesses to keep their workers on payroll."[1] PPP loans were intended to be used to help fund payroll costs, including

---

[1] https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/first-draw-ppp-loan#section-header-6 (last accessed July 30, 2021).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

benefits; mortgage interest, rent, and utilities; and certain other costs of business operations. As relevant here, a business was eligible to receive PPP loans if it employed not more than 500 employees. *See* 15 U.S.C. § 636(a)(36)(D)(i)(I).

28.    Initial funding of $349 billion for the PPP was exhausted in less than a month. In April 2020, Congress voted to allocate an additional $300 billion to the program, which was also quickly exhausted. A final $284 billion relief package was approved in December 2020, which also extended the effective deadline for application to May 31, 2021.[2]

29.    Private lenders who were authorized to participate in the PPP processed loan applications and funded approved loans using their own monies, which in turn were 100% guaranteed by the SBA.

30.    Most PPP borrowers who received loans in 2020 were eligible to apply for "Second Draw" loans through the end of the application period.

31.    As relevant here, the maximum amount for either PPP loan was calculated as 2.5 months of average payroll costs[3] incurred by the applicant, plus any outstanding amount of any Economic Injury Disaster Loan ("EIDL").[4] *See* 15 U.S.C. § 636(a)(36)(E).

32.    Borrowers are eligible for full forgiveness of their PPP loans if, during the 8- to 24-week period following loan disbursement: (a) employee and compensation levels are maintained; (b) loan proceeds are spent on payroll costs and other eligible expenses; with (c) at least 60% of the loan proceeds being spent on payroll costs.[5]

---

[2] *See, e.g.,* https://www.womply.com/blog/who-got-the-money-from-the-first-round-of-ppp-funding/ (last accessed July 30, 2021).
[3] "Payroll costs" were defined to include "salary, wage, commission, or similar compensation." 15 U.S.C. § 636(a)(36)(A)(viii).
[4] The EIDL program provided up to $10,000 to small businesses experiencing temporary loss of revenue due to COVID-19.
[5] *See* https://tinyurl.com/SBA-PPP-Loan-Forgiveness (last accessed July 30, 2021). On information and belief as of the filing of this Complaint, none of the loans at issue have been forgiven (or repaid).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## 2. PPP Loan Certifications

33.    To receive a PPP loan, a borrower was required to first complete the Borrower Application Form (the "Application").[6]

34.    The Application required the borrower to certify, *inter alia*, that the applicant was "eligible to receive a loan" under the PPP, and that it would use loan proceeds consistent with the PPP rules in effect at the time of application. *Id.*, at 2.

35.    Applicants were also required to initial the following statements:

> The funds will be used to retain workers and maintain payroll [or other authorized purposes] as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.
>
> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

*Id.*

## 3. Lender Obligations and Processing Fees

36.    The PPP required borrowers to submit Applications to private commercial lenders for processing and funding. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lenders to the SBA in the course of processing the loans.

37.    According to SBA guidance:

---

[6]    *Available at* https://www.sba.gov/document/sba-form-2483-ppp-first-draw-borrower-application-form (last accessed July 30, 2020). The Borrower Application Form went through at least ten iterations. The quoted passages are consistent from the first version (June 12, 2020) to the last (March 18, 2021).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

> Providing an accurate calculation of payroll costs is the responsibility of the borrower, and the borrower attests to the accuracy of those calculations on the Borrower Application Form. Lenders are expected to perform a good faith review, in a reasonable time, of the borrower's calculations and supporting documents concerning average monthly payroll cost. For example, minimal review of calculations based on a payroll report by a recognized third-party payroll processor would be reasonable.

Paycheck Protection Program Frequently Asked Questions (June 25, 2020), *available at* https://www.sba.gov/sites/default/files/2020-06/Paycheck-Protection-Program-Frequently-Asked-Questions%20062520-508.pdf (last accessed July 30, 2021).

38.    As explained in the PPP Interim Final Rule, a PPP lender was required to "confirm receipt of borrower certifications; confirm receipt of information demonstrating that a borrower had employees for whom the borrower paid salaries and payroll taxes on or around February 15, 2020; [and] confirm the dollar amount of average monthly payroll costs." Paycheck Protection Program (PPP) Information Sheet - Lenders, *available at* https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

39.    However, "Lenders are permitted to rely on borrower certifications and representations." *Id.*

40.    Lenders received processing fees from the SBA, in the following amounts:

   a.    Five percent for loans of not more than $350,000;

   b.    Three percent for loans of more than $350,000 and less than $2,000,000; and

   c.    One percent for loans of $2,000,000 or more.

*Id.* These fees were based on the balance of the financing outstanding at the time of final disbursement. *Id.*

**B.    The Federal False Claims Act**

41.    The FCA, 31 U.S.C. §§ 3729 *et seq.*, establishes liability for any "person" (natural or corporate) who, *inter alia*:

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

a. "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(l)(A);

b. "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.* § 3729(a)(l)(B); or

c. "conspires to commit a violation" of either of the above subsections, *id.* § 3729(a)(l)(C).

42.    "Knowing" is defined by the FCA to include "deliberate ignorance of the truth" or "reckless disregard of the truth." *Id*. § 3729(b)(1).

43.    The FCA defines "claim" to include any request for money that:

is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—

(I)    provides or has provided any portion of the money or property requested or demanded; or

(II)    will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded….

*Id*. § 3729(b)(2)(A)(ii).

44.    For each false claim or other FCA violation, the statute provides for the assessment of treble damages, plus a civil penalty. *Id*. § 3729(a)(1)(G).[7]

45.    The FCA also contains a *qui tam* mechanism and provides for payment of a percentage of the United States' recovery to the *qui tam* relator, as well as "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs," in the event of a settlement or a successful trial. *Id.* § 3730(b), (d). "All [such] expenses, fees, and costs must be awarded against the defendant." *Id.*, subsection (d).

---

[7] 31 U.S.C. § 3729(a)(1)(G) provides a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub. L. No. 104-410, 104 Stat. 890 (1990), *amended by* the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, 129 Stat. 599 (2015); *see* 28 U.S.C. § 2461 note. On June 19, 2020, the Department of Justice promulgated a Final Rule increasing the penalty for FCA violations occurring after November 2, 2015. For such penalties assessed after June 19, 2020, the minimum penalty is $11,665 and the maximum is $23,331. *See* 28 C.F.R. § 85.5; 85 F.R. 37005 (June 19, 2020).

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

**C.    The Fair Labor Standards Act,**

46.    The federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"),

provides, in pertinent part, that

> no employer shall employ any of his employees who in any workweek … is
> employed in an enterprise engaged in commerce or in the production of goods for
> commerce, for a workweek longer than forty hours unless such employee receives
> compensation for his employment in excess of [forty hours] at a rate not less than
> one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

47.    The FLSA provides damages for violations of § 207 in the amount of the unpaid

overtime compensation and an additional equal amount as liquidated damages, along with "a

reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* § 216(b).

**D.    New York Labor Laws and Regulations**

48.    Section 142-2.2 of Article 12 of the New York Codes, Rules, and Regulations

("NYCRR") provides that "[a]n employer shall pay an employee for overtime at a wage rate of

one and one-half times the employee's regular rate in the manner and methods provided in" the

FLSA.

49.    Further, 12 NYCRR § 142-2.4 requires the payment of an additional "one hour's

pay at the basic minimum hourly wage rate … for any day in which the spread of hours exceeds

10 hours."

50.    Section 198(3) of Article 6 of the New York Labor Law ("NYLL") provides that

any employee "shall have the right to recover full wages, benefits and wage supplements and

liquidated damages accrued during the six years previous to the commencing of such action."

51.    19 NYLL § 663(3) provides:

> If any employee is paid by his or her employer less than the wage to which he or
> she is entitled under the provisions of this article, he or she shall recover in a civil
> action the amount of any such underpayments, together with costs all reasonable

11

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due.

# VI.
# STATEMENT OF FACTS

## A.    Facts Relevant to Defendants' PPP Application Fraud

52.    Because the amount of a PPP loan was based on the borrower's payroll cost, some applicants chose to fraudulently overstate their payroll costs in order to receive larger loans.

53.    At the direction of Defendants Jack and Juda Srour, each of the Jay Suites Corporate Defendants applied for and received two loans. On each Application, these Defendants overstated the number of employees working at each location, and thereby overstated their payroll costs[8]:

a.    Defendant Jay Suites I received a First Draw loan of $64,722, and on that Application claimed a total of 11 employees. This Defendant received a Second Draw loan of $73,979, claiming only four employees at that location. However, during all relevant times there were no more than six employees at that location, two of whom were shared with another location.

b.    Defendant Jay Suites II received a First Draw loan of $45,133, and on that Application claimed 10 employees. This Defendant received a Second Draw loan of $55,654, claiming only three employees at that location. However, during all relevant times there were no more than three employees at that location, one of whom was shared. The Second Draw Application for this location was approved on February 20, 2021. The location had already closed by then.

c.    Defendant 34th Street Suites received a First Draw loan of $150,201, and on that Application claimed 16 employees, and a Second Draw loan of $149,379, claiming 10 employees. However, during all relevant times no more than five to six employees worked at that location.

d.    Defendant 38th Street Suites received a First Draw loan of $119,178, and on that Application claimed 19 employees, and a Second Draw loan of $156,067, claiming

---

[8] Loan amounts and jobs claimed are taken from data reported at https://projects.propublica.org/coronavirus/ bailouts/ (last accessed July 30, 2021). This information was obtained from the SBA via a FOIA request filed by a number of news organizations. On Nov. 5, 2020, the District Court for the District of Columbia ordered the SBA to release the information. *See WP Company, LLC, et al. v. U.S. Small Business Administration*, 20-cv-1240 (D.D.C.), Dkt. 23.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

14 employees. However, during all relevant times there were no more than seven employees at that location.

e. Defendant Broad Street Suites received a First Draw loan of $48,253, and on that Application claimed seven employees, and a Second Draw loan of $59,568, claiming three employees. However, during all relevant times there were no more than three employees at that location, one of whom was shared.

f. Defendant Madison Ave. Suites received a First Draw loan of $53,797, and on that Application claimed four employees, and a Second Draw loan of $58,543, claiming three employees. However, during all relevant times there were no more than three employees at that location, one of whom was shared.

g. Defendant Midtown East Suites received a First Draw loan of $47,530, and on that Application claimed six employees, and a Second Draw loan of $36,367, claiming four employees. However, during all relevant times there were no more than three employees at that location.

h. Defendant Times Square Suites – where Relator worked – received a First Draw loan of $134,988, and on that Application claimed 17 employees, and a Second Draw loan of $133,019, claiming 10 employees. However, during all relevant times there were no more than five to seven employees at that location.

| Company | Loan amounts | | Jobs claimed | Actual jobs |
|---|---|---|---|---|
| Jay Suites I | 1st Draw | $64,722 | 11 | 6 (2 shared with another location) |
| | 2nd Draw | $73,979 | 4 | |
| Jay Suites II | 1st Draw | $45,133 | 10 | 3 (1 shared with another location) |
| | 2nd Draw | $55,654 | 3 | **NB: location closed Feb. 2021** |
| 34th Street Suites | 1st Draw | $150,201 | 16 | 5-6 |
| | 2nd Draw | $149,379 | 10 | |
| 38th Street Suites | 1st Draw | $119,178 | 19 | 7 |
| | 2nd Draw | $156,067 | 14 | |
| Broad Street Suites | 1st Draw | $48,253 | 7 | 3 (1 shared with another location) |
| | 2nd Draw | $59,568 | 3 | |
| Madison Ave. Suites | 1st Draw | $53,797 | 4 | 3 (1 shared with another location) |
| | 2nd Draw | $58,543 | 3 | |
| Midtown East Suites | 1st Draw | $47,530 | 6 | 3 |
| | 2nd Draw | $36,367 | 4 | |
| Times Square Suites | 1st Draw | $134,988 | 17 | 5-7 |
| | 2nd Draw | $133,019 | 10 | |
| **1st Round Totals** | | **$663,802** | **90** | **35-38** |
| **2nd Round Totals** | | **$722,576** | **51** | |
| **TOTAL BORROWED** | | **$1,386,378** | | |

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

54.    By overstating the number of employees at each location (and thus overstating their payroll costs), the Jay Suites Defendants were able to obtain larger PPP loans than they were entitled to.

55.    In addition, the Jay Suites Defendants cut both the hours and the pay rates of most if not all of their employees during the pandemic, despite the certifications on their applications that the PPP loans would be used "to retain workers and maintain payroll."

56.    For instance, during the pandemic Relator's hours were cut, and he was not paid his full wages (*see* ¶¶ 75-77, *infra*; **Exhibits A** and **B**).

57.    In addition, Jay Suites made work conditions so challenging during the loan periods as to constructively discharge several employees, in further derogation of their certifications that the PPP loans would be used "to retain workers and maintain payroll."

58.    The Jay Suites Defendants' PPP loan applications were therefore both factually and legally false.

59.    The Jay Suites Defendants submitted these applications to Defendant Signature Bank, which in turn submitted information from those applications to the SBA.

60.    Defendant Signature Bank knew or reasonably should have known that the Jay Suites Defendants' PPP loan applications were both factually and legally false, because the Bank had access to the Jay Suites Defendants' payroll records. Despite that knowledge – and motivated by a desire to obtain processing fees – Signature Bank submitted information from those applications to the SBA, which the SBA then used to guarantee the loans.

61.    Defendants thus conspired to submit false and fraudulent PPP loan information to the SBA, in violation of the False Claims Act.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

62.    On information and belief, Defendant Signature Bank engaged in the same fraud with and on behalf of many other recipients of the thousands of PPP loans the Bank made.

**B.    Facts Relevant to Overtime and Spread-of-Hours Violations**

**1.    The Jay Suites Corporate Defendants Constitute a Single Integrated Enterprise**

63.    At all times relevant herein, either or both of the Individual Defendants possessed operational control over and ownership interests in each and every Jay Suites Corporate Defendant.

64.    At all times relevant herein, the Jay Suites Corporate Defendants shared a common management, and were centrally controlled and/or owned by the Individual Defendants.

65.    At all times relevant herein, the Jay Suites Corporate Defendants shared the same principal place of business, and engaged in the same business of renting temporary office space in Manhattan.

66.    At all times relevant herein, the Jay Suites Corporate Defendants shared payroll and bookkeeping functions.

67.    At all times relevant herein, the Jay Suites Corporate Defendants shared and advertised on the same website, and further presented themselves as a single corporate entity on such website.

68.    At all times relevant herein, the Individual Defendants have centrally controlled the labor and employment relations of the Jay Suites Corporate Defendants.

69.    At all times relevant herein, the Individual Defendants have imposed and enforced common employee guidelines and procedures at each of the corporate Defendants.

70.    At all times relevant herein, Defendants the Srour brothers have maintained control, oversight, and direction over Relator and all other employees of all Jay Suites Corporate Defendants, including timekeeping, payroll, and other practices and policies that applied to them.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

71.     At all times relevant herein, the Jay Suites Defendants paid their employees by the same methods, and otherwise acted in the interests of each other with regard to their employees.

72.     Relator was nominally employed by Times Square Suites, LLC, but in reality he and all similarly situated individuals were employed by the single integrated enterprise of which all Jay Suites Corporate Defendants were a part, and which was owned and controlled by Individual Defendants the Srour brothers.

**2.  Enterprise and Individual Coverage**

73.     At all times relevant herein, the single integrated enterprise formed by the Jay Suites Corporate Defendants had more than two employees, and had annual gross revenues well in excess of $500,000.

74.     At all times relevant herein, Relator made frequent interstate communications and handled records of interstate transactions as part of his duties as the Jay Suites Defendants' employee.

**3.  Relator was a Non-Exempt Employee**

75.     Relator was employed pursuant to a contract, effective December 19, 2016. **Exhibit A**, ¶ 2. The contract specified that Relator was to be paid $800 per week, plus commissions. *Id.*, ¶ 7.

76.     The contract did not specify the hours to be worked by Relator, but instead stated:

> The Employer agrees to permit a reasonable degree of flexibility in work hours. In cases where extra time is worked in a day or a week, the employee agrees to take equivalent time off in place of overtime pay within three months, unless there is an express agreement to pay at overtime rates.

*Id.*, ¶ 11. In other words, the Jay Suites Defendants purported to treat Relator as an exempt employee, receiving salary plus commissions.

77.     However, Relator did not receive a salary, but was instead paid an hourly rate. *See* **Exhibit B** (sample paystubs from March – September, 2020). Moreover, the Jay Suites Defendants reduced Relator's hours for many months because of the effect of the pandemic on their business, *see id.* – exactly the circumstance that the PPP loans were intended to prevent.

### 4. Relator Frequently Worked More Than 40 Hours in a Week, and More than 10 Hours in a Day

78.     Before the onset of the pandemic, Relator frequently worked more than 40 hours in a week.

79.     For instance, every two or three months, Defendants held sales meetings after regular work hours. The meetings generally lasted about two hours, and attendance was mandatory, but the time was unpaid.

80.     Relator recalls that he attended such meetings during the weeks beginning April 21 and July 12, 2018, and May 2, 2019, bringing his total hours over 40 for each of those weeks.

81.     Relator also frequently worked more than 10 hours in a day. For instance, Relator worked more than 10 hours on each on the days when after-hours sales meetings were held, as mentioned in the preceding paragraph.

82.     **Exhibit C** is a photograph of Relator dated March 1, 2017, that was posted by the Jay Suites Defendants on the Jay Suites Instagram account with the caption "7PM still making deal[s] at @jaysuites #nyc #office #meetingroom #entrepreneurlife #jaysuites." Relator had come to work that day at 9:00 a.m.; he did not get a break for lunch or dinner; and he did not leave work until sometime after that picture was taken – resulting in a "spread" of more than 10 hours that day.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## VII.
## FIRST CAUSE OF ACTION
## FEDERAL FALSE CLAIMS ACT:
## PRESENTATION OF FALSE CLAIMS
## 31 U.S.C. § 3729(a)(1)(A)

83.    Relator repeats and realleges ¶¶ 52-62 as if fully set forth herein.

84.    As explained in those paragraphs, Defendants knowingly presented or caused to be presented false claims in the form of fraudulent loan applications.

85.    The applications were factually false in that the Jay Suites Defendants fraudulently exaggerated and misrepresented their payroll costs and number of employees.

86.    The claims at issue were also legally false because they contained or incorporated false certifications as to their truthfulness, accuracy, and compliance with all applicable laws, regulations, and program instructions for payment.

87.    By means of these fraudulent misrepresentations and certifications, the Jay Suites Defendants sought and obtained PPP loans in amounts to which they were not entitled.

88.    The misrepresentations were material to decisions by the SBA to guarantee those loans, and the SBA would not have guaranteed the loans in the amounts requested, had it known of the falsity of the applications.

89.    The loans were made to advance the PPP program, which was a government program, and to advance the government interest in supporting businesses during the COVID-19 pandemic. The Jay Suites Defendants' lender was a recipient of government guarantees for those loans; therefore the PPP loan applications were claims on the government for purposes of the FCA.

90.    Accordingly, the Jay Suites Defendants' knowing presentations of false or fraudulent applications to Signature Bank, and the Bank's submission of information from those applications to the SBA, were violations of 31 U.S.C. § 3729(a)(l)(A).

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

91.     Each presentation of a false or fraudulent claim is a separate violation of the FCA.

92.     By virtue of the false and fraudulent claims that Defendants presented or caused to be presented, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $11,665 and up to $23,331 for each violation.

## VIII.
### SECOND CAUSE OF ACTION
### FEDERAL FALSE CLAIMS ACT:
### MAKING OR USING FALSE RECORD OR STATEMENT
### MATERIAL TO A FALSE OR FRAUDULENT CLAIM
### 31 U.S.C. § 3729(a)(1)(B)

93.     Relator repeats and realleges ¶¶ 52-62 as if fully set forth herein.

94.     As explained in those paragraphs, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent PPP loan applications, in violation of 31 U.S.C. § 3729(a)(1)(B).

95.     The making and use of these false records and statements were material to decisions by the SBA to guarantee those loans, and the SBA would not have guaranteed the loans in the amounts requested, had it known of the falsity of the records and statements.

96.     The loans were made to advance the PPP program, which was a government program, and to advance the government interest in supporting businesses during the COVID-19 pandemic. The Jay Suites Defendants' lender was a recipient of government guarantees for those loans; therefore the PPP loan applications were claims on the government for purposes of the FCA.

97.     By virtue of Defendants' making and use of these false or fraudulent records and statements, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $11,665 and up to $23,331 for each violation.

FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)

## IX.
### THIRD CAUSE OF ACTION
### FEDERAL FALSE CLAIMS ACT:
### CONSPIRACY
### 31 U.S.C. § 3729(a)(1)(C)

98.    Relator repeats and realleges ¶¶ 52-62 as if fully set forth herein.

99.    As set forth above, Defendants agreed to submit false and fraudulent information to the SBA so that the Jay Suites Defendants could obtain PPP loans in amounts to which they were not entitled.

100.    The submission by the Jay Suites Defendants of false and fraudulent applications to Defendant Signature Bank, and the subsequent submission by Signature Bank of false and fraudulent information from those applications to the SBA, were acts in furtherance of Defendants' agreement.

101.    Therefore, Defendants conspired to submit to the SBA false and fraudulent information from the PPP loan applications of the Jay Suites Defendants, in violation of 31 U.S.C. § 3729(a)(1)(C).

102.    In addition, Defendant Signature Bank entered into separate similar conspiracies with many other recipients of the thousands of PPP loans that the Bank made.

103.    The false and fraudulent information was material to decisions by the SBA to guarantee those loans, and the SBA would not have guaranteed the loans in the amounts requested, had it known of the falsity of the information.

104.    By virtue of Defendants' making and use of these false or fraudulent records and statements, the United States suffered damages in an amount to be determined at trial, and is entitled to treble the amount of those damages, plus civil penalties of not less than $11,665 and up to $23,331 for each violation.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

### X.
### FOURTH CAUSE OF ACTION
### FEDERAL FAIR LABOR STANDARDS ACT
### <u>29 U.S.C. §§ 207, 216(b)</u>

**(*against the Jay Suites Defendants only*)**

105.    Relator repeats and realleges ¶¶ 63-82 as if fully set forth herein.

106.    As explained in those paragraphs, the single integrated enterprise formed by the Jay Suites Corporate Defendants had more than two employees, and had annual gross revenues well in excess of $500,000.

107.    At all relevant times, the Jay Suites Defendants employed Relator within the meaning of the FLSA.

108.    At all relevant times, Relator made frequent and regular interstate communications and handled records of interstate transactions as part of his duties as the Jay Suites Defendants' employee.

109.    At all relevant times, Relator was a non-exempt employee of the Jay Suites Defendants within the meaning of the FLSA.

110.    29 U.S.C. § 207(a)(1) provides, in pertinent part, that

no employer shall employ any of his employees who in any workweek … is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed.

111.    Relator worked over forty hours per week on numerous occasions.

112.    The Jay Suites Defendants failed to pay Relator at one-and-one-half times his regular rate of pay for all hours he worked each week in excess of forty, as required under the FLSA.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

113.    The Jay Suites Defendants' conduct and practices, described herein, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

114.    Because the Jay Suites Defendants willfully violated the FLSA, a three-year statute of limitations applies to such violation, pursuant to 29 U.S.C. § 255.

115.    As a result of the foregoing, Relator was illegally denied compensation earned, in such amounts as may be determined at trial, and is entitled to recovery of all unpaid amounts, liquidated damages, costs, reasonable attorney's fees and other compensation pursuant to 29 U.S.C. § 216(b).

**XI.**
**FIFTH CAUSE OF ACTION**
**NYLL VIOLATIONS**
**<u>12 NYCRR § 142-2.2</u>**

***(against the Jay Suites Defendants only)***

116.    Relator repeats and realleges ¶¶ 63-82 as if fully set forth herein.

117.    At all relevant times, the Jay Suites Defendants employed Relator within the meaning of the NYLL.

118.    At all relevant times, Relator was a non-exempt employee of the Jay Suites Defendants within the meaning of the NYLL.

119.    12 NYCRR § 142-2.2 provides that "An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA.

120.    Relator worked over forty hours per week on numerous occasions while employed by the Jay Suites Defendants.

121.    The Jay Suites Defendants failed to pay Relator time-and-a-half for all hours worked each week in excess of forty, as required under the NYLL.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

122.    The Jay Suites Defendants' conduct and practice, described above, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

123.    A six-year statute of limitation applies to each such violation pursuant to NYLL §§ 198(3), 663(3).

124.    As a result of the foregoing, Relator was illegally denied compensation earned, in such amounts as may be determined at trial, and is entitled to recovery of all unpaid amounts, liquidated damages, prejudgment interest, costs, reasonable attorney's fees and other compensation pursuant to NYLL §§ 198(3), 663(3).

**XII.**
**SIXTH CAUSE OF ACTION**
**NYLL VIOLATIONS**
**12 NYCRR § 142-2.4**

**(*against the Jay Suites Defendants only*)**

125.    Relator repeats and realleges ¶¶ 63-82 as if fully set forth herein.

126.    At all relevant times, the Jay Suites Defendants employed Relator within the meaning of the NYLL.

127.    At all relevant times, Relator was a non-exempt employee of the Jay Suites Defendants within the meaning of the NYLL.

128.    12 NYCRR § 142-2.4 provides, in pertinent part, that

An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which … the spread of hours exceeds 10 hours ….

129.    12 NYCRR § 142-2.18 provides that "The spread of hours is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty."

130.    Relator frequently worked more than ten hours per day.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

131.    The Jay Suites Defendants failed to pay Relator one additional hour of pay at the basic minimum hourly rate on those days when his spread of hours exceeded ten, as required under the NYLL.

132.    The Jay Suites Defendants' conduct and practice, described above, were/are willful, intentional, unreasonable, arbitrary and in bad faith.

133.    A six-year statute of limitation applies to each such violation pursuant to NYLL §§ 198(3), 663(3).

134.    As a result of the foregoing, Relator was illegally denied compensation earned, in such amounts as may be determined at trial, and is entitled to recovery of all unpaid amounts, liquidated damages, prejudgment interest, costs, reasonable attorney's fees and other compensation pursuant to NYLL §§ 198(3), 663(3).

## XII.
## PRAYER FOR RELIEF

**WHEREFORE**, Relator respectfully requests that this Court grant the following relief:

A.    Judgment against all Defendants and in favor of the United States, in an amount equal to the damages the United States has sustained due to Defendant's actions, trebled, plus a civil penalty for each violation of 31 U.S.C. § 3729(a)(l)(A), (B) and (C), pursuant to 31 U.S.C. § 3729(a), as adjusted by operation of the federal Civil Penalties Inflation Adjustment Act of 1990;

B.    The maximum award to Relator allowed, along with his attorney fees and expenses and other costs of this action, pursuant to 31 U.S.C. § 3730(d);

C.    Judgment against the Jay Suites Defendants for damages for all unpaid compensation, and for liquidated damages in an amount equal to all such unpaid compensation, pursuant to 29 U.S.C. § 216(b);

D.    Judgment against the Jay Suites Defendants for damages for all unpaid compensation, and for liquidated damages in an amount equal to all such unpaid compensation, pursuant to the NYLL and the NYCRR; and

E.    Such other and further relief as this Court deems equitable and just.

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## XIV.
## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Relator demands trial by jury on all questions of fact raised by this Complaint.

Dated: August 9, 2021                    Respectfully submitted,

**BROWN, LLC**

<u>/s/ Patrick S. Almonrode</u>
Patrick S. Almonrode (PA0428)
Jason T. Brown (JB6579)
111 Town Square Place, Suite 400
Jersey City, NJ 07310
(877) 561-0000 (office)
(855) 582-5297 (fax)
*jtb@jtblawgroup.com*
*patalmonrode@jtblawgroup.com*

*Attorneys for Relator*
*Mark Mitchell*

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2021, I caused a true copy of the Complaint in the matter captioned *United States of America ex rel. Mark Mitchell v. Jay Suites I, LLC, et al.*, along with written disclosure of substantially all material evidence and information that Relator possesses, to be served upon the following via USPS Registered Mail, Return Receipt Requested:

> Office of the Attorney General of the United States
> United States Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001
> *and by email to*
> *civilfrauds.quitams@usdoj.gov*
>
> Office of the United States Attorney
> Southern District of New York
> 86 Chambers Street, 3rd Floor
> New York, NY 10007
>
> Office of the Attorney General
> State of New York
> 120 Broadway
> New York, NY 10271

*/s/ Patrick S. Almonrode*
Patrick S. Almonrode